My name is David Zuckman. I represent Appellant Steven Joe McWilliams. Your Honors, I suppose I should cut to the chase with respect to the Rage case. Of course, the main question is whether Mr. McWilliams' activities can be classified as commercial or not commercial. The first point, and I think of crucial importance, is that we should only be talking about Count 2, the account of conviction. The government spends extensive time in their brief talking about Count 1 and other activities that are not part of the factual basis of Count 2, nor are they charged in the indictment, nor did Mr. McWilliams agree to the facts to. Why these facts are relevant is not clear to Mr. McWilliams. As an initial matter, we had this issue litigated at sentencing, where the probation office recommended that Mr. McWilliams be held accountable for the Count 1. CHIEF JUSTICE ROBERTS, D.C. Council, I'm a little confused on how to deal with this. It strikes me that it may be important, whether it's commercial, whether factually the charge has anything to do with commerce and anything to do with commerce among the states. I don't know quite how to make that decision procedurally. Should there be some sort of factual hearing as though it was a civil case or a motion to suppress, where you have a factual evidentiary hearing on a preliminary matter and you get findings by the district court? How do you figure it out? As Your Honor knows, in my letter brief, I take the position that because it's a factual determination, it's essentially a jury question and it's a six-and-a-half. So you're saying just give it to the jury? I'm saying I'm entitled, that Mr. McWilliams is entitled to a jury determination. But it gets more complicated because you pled guilty. Yeah. I mean, that is a ---- So now what? Now what? And you pled guilty to something, and it says to be distributed to others. Right. And that's rather ambiguous. That's true. And the reason it's ambiguous is because the government wouldn't allow Ms. Jordier to be mentioned in the plea agreement. As stated on page 27 of my opening brief, the surety for Mr. McWilliams' bond, the person he lives with, Ms. Barbara Jordier, who is present in court today, lived with him at the Wilson Avenue address, and those 25 marijuana plants were for them. Well, if it had said in the plea agreement that he had it for himself and for Ms. That was the other person, yes. Okay. Then would you be entitled to a jury trial? Would I be entitled to a jury trial? Or would we just look at what you agreed to and make a judgment about whether that was or wasn't commercial? Well, I think that if you just look at what's in the facts in the plea agreement, I think it's hands down that I have to win. But it says distributed to others. I mean, so that's kind of vague. But Raich has distribution in it. So I don't leave Raich, that Angel McClary Raich did not grow her own marijuana. There were two John Doe plaintiffs in that case who grew marijuana for Ms. Raich and provided it to her. So as far as the Were they official caretakers of hers? I believe so, yes. Distribution but no commerce. Exactly. And Raich makes clear that you can have that, you know, so long as there's no exchange of funds. Well, it doesn't make it totally clear. For one thing, it's preliminary injunction. So all Raich says is that the district court was wrong in saying there's no probability of success. Actually, there is a significant probability of success. I think, I don't think it would be fair to say that Raich holds that as a matter of law, success is certain because there is necessarily a commerce clause invalidity of what Congress did. Yeah, but there's a necessary condition, which is if distribution standing alone was sufficient to create a commercial character, then Raich would have lost. In other words, if the fact that distribution existed, her getting marijuana from her caregivers, if that was sufficient to make the No, but the theory of Raich seemed to be that as long as it was within the California statute, it was not in commerce or not, didn't meet the commerce clause requirements. And so if you're outside of that, then you have a variant. And what I'm trying to find out is just a sort of technical problem of whether, how far your jury request goes given the fact that there is a guilty plea with language about what the crime was. Yeah. Well, I think that if you looked at just the guilty plea, all you have, the best you could say is that the government can prove that there was distribution to others. To others, and nothing indicating that those others were, that he was their caretaker or vice versa. Not one way or the other. All right. So what do we do now? Do we have a hearing about what the guilty plea meant? Do we have an evidentiary hearing about what actually happened? And you say we go to trial, back to a new jury trial, but why do we do that? I think that, well, to answer the first question, I think that if there's ambiguities, the rule of lenity requires that they be resolved in Mr. McMillan's favor. You can't assume that there are aggravating facts. And to the extent the government wishes to prove it. I don't know if that's, if the rule of lenity has anything to do with it. Rule of lenity is for interpreting a criminal statute. And here what we're doing is interpreting whether others in the indictment not the statute, is others within the household or outside the household. And I think that we have to try to convince. If it's a jurisdictional fact, I mean, if it's required in order for them to prove Commerce Clause jurisdiction, that it be distributed to others who are not. This was not in the indictment, right? The distribution was not. No, it was in the indictment. What? There's an indictment. It was a manufacturer indictment. Distribution was not in the indictment. Distribution was not in the indictment. Right. It was only in the factual basis. Only in the third, yeah. The basis was the, at the plea colloquy, was there any difference in what Mr. McWilliams actually pled to? The distribution was mentioned as part of the factual basis in the plea agreement during the plea colloquy. So, yeah, I mean, that's different than what was charged in the indictment. The indictment was purely manufacturing. So if there is a variance of what he pled to from the indictment, what do we do with that? Well, it's my position that you would look to see whether what he pled to would establish commerce clause jurisdiction. I don't think it does. The answer is we don't know, because it depends. Some versions would and some versions wouldn't. Right. And I think that, you know, because he's a criminal defendant and his liberty is at risk, I think that he gets the benefit. Well, that doesn't – that really doesn't make a lot of sense. I mean, because this was – I mean, you might be able to lead to the conclusion that you should have a hearing as to what actually happened. Well, I think it certainly requires that. You can't just have the government assert facts and then they become truth. That would be contrary. Yeah. Is it in your client's interest to vacate this plea agreement? Is it in my client's – well, I wouldn't think that the plea agreement would have to be vacated in any sense. I think that if this Court wanted to remand for future – further action, it would. I'm sure it would if we were going to have a jury trial. That's what I'm trying to find out. What are you asking for? Are you asking – are you arguing that now the whole plea is off, or what is it? I'm arguing that under the facts as established by the guilty plea, there is not commerce clause jurisdiction as that was explained in Raich. Raich clearly holds that the intrastate, non-economic cultivation and use of marijuana pursuant to a doctor's recommendation does not have substantial effect. The government would be arguing, I presume, that because he distributed to others, that would be sufficient to create commerce clause jurisdiction. But he did go and – he did give some of this – some marijuana, as I read the record, not these 25 plans, to other people, right aside from what was in count one. But that's not before the Court. The only thing the Court can do now is to say, well, I'm not sure whether it is or not. Incidentally, assume we're not going to cut you off in 10 minutes. This is a major constitutional case. Okay. They just assign a time based on how many defendants and how many issues in a criminal case is presumptively 10 minutes, that's all. I had a hunch, Your Honor. What I don't get is, it seems to me that under that Oakland cannabis decision by the Supreme Court, if he's distributing to other sick people in California, it may not be a violation of California law, but it's still a violation of Federal law, unless the Federal law is unconstitutional, which – because it exceeds Congress's powers under the Commerce Clause. Your argument about misclassification probably runs up against Oakland cannabis. So I get that far without any trouble. Okay. Then my next step is, I'm supposed to avoid constitutional questions, if possible. Certainly. So it would really be nice to know – well, I don't know if it would avoid it, but it would be nice to know whether he's distributing to others. A lot of things violate Federal law without violating State law, like possession of eagle feathers, possession of walrus ivory, all kinds of things violate Federal and not State law. No problem with violating Federal and not State law. It doesn't mean the guy gets off. It just means it's the U.S. Attorney's problem to do something about it. So I get that far. And now I want to know, how do I find out if he distributed to others? The plea bargain doesn't tell me one way or another. I don't see any basis for applying the rule of lenity to a plea bargain. That's a rule for construing statutes. It seems to me we need to find out. I don't know exactly how to find out. Do you look at a pre-sentence report? Funny way to decide a constitutional question. Probably it should be like suppression, get an evidentiary hearing and findings of fact. Well, I disagree that it's like suppression, because I think that because we're talking about jurisdiction and we're talking about elements of the offense, In re Winship and Sullivan. But that may well be true if you had an internal guilty plea. But the question is, what do we do with it now that you have internal guilty plea? Well, I think that you're confined to looking at the facts as stated in the plea agreement. And I'm not – clearly the plea agreement says he distributed to others. The question becomes, is that standing alone sufficient to create common cause jurisdiction? When you enter into a plea agreement, it's a conditional plea agreement, right? Correct. And you reserved out an issue. And what is the issue that you reserved out? I reserved four issues. I reserved that the 841 was not intended to cover the legitimate practice of medicine that States have the right to define. No, but specifically what it says in the plea agreement was the violence pre-trial motions. Yes. And these are my pre-trial motions. They are – what I'm filing in before this Court is what I filed before the district court. And what was your pre-trial motion on this issue? On the Commerce Clause, it was specifically this issue. I cited Morrison, and then I argued McCoy, because McCoy came out just before the guilty plea, and I said that there wasn't Commerce Clause jurisdiction. The district court said Wickard, and then we entered the plea. And then Raich came down and says that Wickard's wrong. Did you argue in the first place that you had a right to a jury trial? At that point, I argued I had a right to a hearing. I didn't specify a jury trial, because at that – but I did say that the facts were contested. And, you know, at no point did Mr. McWilliams ever accede to the government's version of events underlying Count 1. And it might be a different case had he done that, but he didn't. And he asked for a hearing. And I think that – So essentially what you asked for is what Judge Klinefeld is suggesting, something like a suppression hearing. Absolutely. I mean, certainly I asked for a hearing, no question about that. I'm really – I'm very told by the fact that your client pled guilty to Count 2. And Count 2 does not charge distribution as it's used in the drug statutes. So I'm not sure – you could have said, you know, the sky's falling in the plea agreement, but the elements of the crime to which he pled guilty, I would think, would govern his sentence. Right. I mean, I think that the ambiguity, and I think the problem is, is that because the Controlled Substance Act was passed purely on the substantial effect on interstate commerce rather than having a jurisdictional nexus requirement that the drugs have traveled in interstate commerce, that removes the Commerce Clause issue from the jury. Like in 922 cases, we have to prove that the gun traveled in interstate commerce, so the Commerce Clause issue is always presented to the jury. But in drug cases, it's always presumed that because Congress had made these findings saying, hey, this affects interstate commerce, that solves that issue. There is no question that this affects interstate commerce. And then, of course, this Court has come out with a law. You know, I see the sense of what you're saying. It makes sense to me to just have – just like in the gun cases, we always instruct the jury. One of the things you have to find is that the gun traveled in interstate commerce. And sometimes that comes up. A person says it's a homemade gun or something like that or manufactured in the State. There are gun manufacturers in the State. So sometimes it comes up. And you're saying you want that here, but I don't see any way that you can have the plea agreement and also a jury trial. It seems to me it's one or the other. And it seems perfectly clear that what you did was plead guilty reserving the constitutional question. So that narrows it down for me to how do we resolve the constitutional question? Well, the number one choice is always avoiding it because of the doctrine of avoidance.  GOLDSTEIN. But the – I mean, the burden isn't on me to establish jurisdiction, right? I mean, the burden is always on the government and, indeed, on this Court. CHIEF JUSTICE ROBERTS. That's a little tricky. The burden is certainly on the government when it's an element of the crime. But you're not facing something like the gun statute, 18 U.S.C. 922 or 924. And here, it's not an element of the crime. You're contending the statute's unconstitutional. And usually the burden is on the party claiming unconstitutionality to establish unconstitutionality. GOLDSTEIN. I think that's where Smith comes in, which is at the end of my letter brief where it was the Marine Maritime Drug Act where Judge Trott wrote, you know, Congress removed the jurisdictional question from the jury, specifically removed it, said, this is a question for the district court. And Judge Trott said, well, you can't do that. You can't just take factual determinations away from the jury because of the Sixth Amendment and good old Winship and Sullivan. The jury makes those calls. Now, it may be the case that you can have crimes such as, you know, you can make it illegal to do. Kagan. So let's be specific. So are you asking us to vacate the plea agreement and send this to a jury trial? Is that what you're asking? GOLDSTEIN. My position is that, no, you should just vacate the conviction because the facts, as stated in the plea agreement, are identical in all material respects to Raich, which found that the jury should not be able to do that. Kagan. Well, we could do that if we looked just at the indictment. That's one possibility. GOLDSTEIN. Well, even if you look at just the facts of the plea agreement, distribution standing alone. Kagan. But it's different distribution. We don't know what kind of distribution it is. For all you can tell, if the factual statement matters, he could have been distributing this for $1,000 each to people on the streets. We don't know. GOLDSTEIN. But when the facts are insufficient, government loses. That's why we have to move on. CHIEF JUSTICE ROBERTS. But it wasn't raised as a factual issue. It was preserved purely as a legal issue. The plea agreement doesn't say that the government can or that it cannot establish beyond a reasonable doubt that he distributed marijuana in interstate commerce. GOLDSTEIN. Right. CHIEF JUSTICE ROBERTS. It seems like we need to find out. I see a lot of merit to what you say, that where you need to find out something factual like that, you have to give it to a jury with a BRD instruction. But you can't have both a plea agreement and a jury determination. GOLDSTEIN. I mean, I hate to disagree, but, you know, a plea agreement is just a contract. In contracts, the law is clear that you construe it against the drafter. So if there's a mistake and there's insufficient evidence in the record, it's up to the jury. CHIEF JUSTICE ROBERTS. How do we know who the drafter is? I mean, I'm assuming that you have letters back and forth, actually. GOLDSTEIN. Well, and, I mean, Your Honors, I know we're quite familiar with how the plea agreement practices go in this. CHIEF JUSTICE ROBERTS. I remember when I used to negotiate them. We didn't have been writing in those days, but we'd argue back and forth what we wanted in them. I was on the defense side. GOLDSTEIN. Those must have been nice days. CHIEF JUSTICE ROBERTS. Well, the prosecutor always had the hammer, but. GOLDSTEIN. Okay. Well, I just only have the experience of being the anvil, so I don't know what it's like to. KAGAN. So to finalize, you don't want the plea agreement to be here. GOLDSTEIN. No, I. KAGAN. You don't want to go to a jury trial.  Intellectually, I couldn't. KAGAN. So the whole jury trial argument's by the board. It's just not what you want. GOLDSTEIN. I don't know whether these facts establish commerce clause jurisdiction. I need to know more. And my backup argument is, well, if that's true, then it's got to go to a jury. I don't see why. KAGAN. But it's not what you asked for originally. What you originally asked for was an evidentiary hearing. GOLDSTEIN. Right. What I was originally asking for was an evidentiary hearing. That is true. Absolutely. GINSBURG. The troubling thing, the troubling part of this is that in the course of plea negotiations, you and the government knew exactly what you were talking about. GOLDSTEIN. Yes. GINSBURG. And the factual predicate that's in here had to have been something that you both understood to mean X or Y. And I guess one possibility would be to remand for an evidentiary hearing on what you meant, both sides, on by distribution to others. Because if, in fact, all distribution for others meant was that he was sharing his personally homegrown and cultivated marijuana with his partner, that then it would break. GOLDSTEIN. But it's not like I didn't elect the government. I mean, it's not like I just am bringing this issue up now. This is clearly stated in my opening brief. I said on page 27, look, this is the person that we're talking about. It's Barbara Jordan, surety on the bond, the person that he lives with. And the government knows it. GINSBURG. Does the government agree with you that that's the sole subject of count two? GOLDSTEIN. I mean, isn't there some principle of law that says that silence in the face of a question is acceptance? The government didn't contradict that. CHIEF JUSTICE ROBERTS. You're not going to get an act of Congress set aside on the basis of silence in a plea agreement. Look, this isn't like a restriction on speech where if there's some overbreadth, the statute fails. This is a restriction on the conduct of selling marijuana. And it may be unconstitutional if applied to a distribution that's not in interstate commerce, but constitutionally within Congress's power, we're applied to distribution that does have a substantial effect on interstate commerce, and the potential overbreadth of the statute is probably not an adequate ground for holding that it's null and void. So it seems like we've got to find out. I'm not trying to skip the statute held null and void. Saying that the statute can't be applied to this people in this particular situation does not mean the statute is null and void. Okay. So if you're not claiming it's null and void altogether, how do we know what this people is like? I don't know if this guy is a big marijuana dealer or if he's just a sick guy who has a couple of plants and his caretaker sniffs the leaves and rolls them up and he gets a little relief from nausea. I think that's exactly correct, Your Honor, that you've hit the issue on the head, which is, you know, based on the facts before you, what can you conclude occurred between Mr. McWilliams and the others who were stated, you know, as being unconstitutional. Before I'm ready to hold unconstitutionality, I've got to – I think I've got to know that it's the latter. You are arguing unconstitutional as applied. Yeah. I'm saying there's no jurisdiction, so I guess I'm saying they're acting ultra-virus. They're – Congress is acting beyond its constitutional grounds. It's applied to your client. Yeah, but not as applied to the thousands of others. I mean, this statute's been around – 215's been around for 8 years. But one problem that occurs to me, therefore, about looking only at the indictment is that wouldn't we have to just vacate everybody's – everybody who's charged with manufacture? No. Why not? If we don't look at the underlying facts, but just at the indictment, why is it – why? Your Honor, Tollett, because they didn't raise it. Tollett. Tollett v. Henderson, the case that says if you don't raise a challenge, even a constitutional challenge, before you plead guilty, then it goes away. If you didn't raise this Commerce Clause issue, you lose it. Well, I understand that, but next time they can raise it. Yes, they can raise it. And then the government – in fact, Your Honor, Judge Kleinfeld in the Todd McCormick case dealt with an instance where a guy claimed medical necessity and had, like, 1,000 plants, and Your Honor had no trouble saying, look, you have 1,000 plants. There's no way you could be using this yourself. And I think that's the right ruling. But this isn't that case. This is 25 plants between two people who have serious medical need. The medical need has been evidenced. I've presented – repeatedly presented to the Court Mr. McWilliams' doctor recommendations – five doctors, by the way – and Ms. McKenzie's medical recommendation. You know, we're not talking about a case where you have all this indicia of drug distribution and this guy's claiming medical necessity, and those cases lose for the most part anyway. We're talking about a small number of plants being held between two people with a legitimate medical need. I've only got 11 minutes over my time. I think probably time for capital eight. Fair enough, Your Honor. Good morning. Timothy Coghlan from the Southern District of California for the Government. I would begin by saying I think the Court has correctly seen two different issues occurring right here. When we entered into this plea agreement, there was really a decision to try to look at the conflict between the State law and the Federal law. The Government had charged in count one, as the Court is aware, 448 plants. In count two, it was 25 plants. The Government was setting up a situation in which they could take a look at whether the Commerce Clause was effectively being used under the Controlled Substance Act to reach this type of activity. I never understood the business about the conflict between Federal and State law. I can see why reporters are interested in that issue, because they don't understand  But it's perfectly all right. But that was exactly what, Your Honor, that was exactly what Mr. McWilliams, a medical marijuana activist, was acting under. That was the basis of his actions in this particular case. But that's frivolous. It isn't frivolous because it informs the Court. I mean, if the State of California said it's okay to rob banks and the Feds say no, it isn't, that's not a problem. It just means that the State troopers won't catch the bank robbers and the FBI will. We actually think that's exactly what's happening here. The Government has said no, the Federal Government has said no. The possession of marijuana, regardless of the use, is illegal. Of course. It's an illegal substance, therefore you can't do it. Of course. But the issue is whether it's constitutional. Exactly. And you have to go back and look, has Congress taken a look at each, in formulating this decision on the controls of marijuana. Well, we know perfectly well from Morrison that congressional findings won't necessarily carry the day. That's correct. But in this particular case, the congressional findings go even further, and they talk about the local possession. All right. But we're not re-arguing Raich, right? I mean, there was no re-arguing Raich. Raich is over. You can go to the Supreme Court, but that's not what we're doing here. Right. In this particular case, I guess what I would say is that, and I think the Court zeroed in on it, is that Raich is over. I believe that the government is still weighing its options in connection with that. I don't know. I have not been informed in connection with what the government has made a decision to do. I think that opinion just came down the other day. The mandate has not issued. It's still up in the air. That's correct. Yeah, the mandate has issued. I checked that. It has? Our mandate has issued. Has issued. The decision of whether to go forward and appeal that to the Supreme Court has not been issued. Counsel, let me ask you just a very factual question. Count two to which Mr. McWilliams pled guilty, were those 25 plants just the plants that he was using for his and Ms. Jardiner's personal use? For their personal use? Right. I think all the evidence that the government has would indicate that that was not just for their personal use. It was for distribution to others, just as it says in the factual basis. Okay. Wait a second. Because you cite a lot of evidence in the brief that – in your brief, the letter brief, that has to do with count one, which he wasn't charged – well, he didn't plead guilty to. Correct. So we're looking at, you know, the subject of his conviction under count two. Was that just the 25 plants? The conviction was as to count to 25 plants. Right. And the marijuana from those plants, was that, to your knowledge, the – for – designed for Mr. McWilliams and Ms. Jardiner's medical assistance, their personal medical aid? No. And how do we know that? The government doesn't know that any more than counsel is arguing to the Court that the marijuana was for Barbara Jardiner's. It wasn't part of the underlying factual basis, because we were looking simply at the constitutional issue at that point in time. As the Court knows, these briefs came in, then Roush came down and reformed the issue. This constitutional issue, this very one, was raised. Correct. And there was a request for an evidentiary hearing, which wasn't held. The evidentiary hearing was simply submitted on the briefs and the Court denied it. Correct. Counsel, why shouldn't we do this? Why shouldn't we remand the case for an evidentiary hearing and findings of fact on whether, with respect to the count of conviction under the plea agreement, there was distribution with a substantial effect on interstate commerce, reserving for another day the question of whether a defendant would be entitled to jury trial on that issue in a case where the defendant did not plead guilty? Why shouldn't we do that prior to determining whether the statute exceeds Congress's power under the Commerce Clause when applied to distribution of marijuana or to manufacture of marijuana and distribution that does not have a substantial effect on interstate commerce? Certainly, if the Court feels they cannot decide based on the plea agreement, which has a factual basis which is very much set out as an exception in Raich, which is lacking sale, exchange, or distribution, in this case we do have distribution, so it is outside the class defined in Raich. Not necessarily. Not necessarily. In Raich, there were multiple people in the household. There were caretakers and the sick person or sick people, as I recall. And I think the caretakers were doing the gardening. And in this case, it may be exactly analogous for all we know. Also, it is not at all plain under Lopez and Morrison that distribution that has no substantial effect on interstate commerce, distribution that's neither commercial nor interstate, would be covered. For example, if a caretaker was doing the gardening and rolling the marijuana cigarettes for the sick person and giving them to the sick person, that's distribution. But it may not have a substantial effect on interstate commerce. So, I don't know that the question is answered in Raich or accepted in Raich, as you contend. And I don't know that we know the answer. We certainly don't know the answer with regard to a clear understanding as to distribution on the facts in the record. And counsel and myself have both submitted argument with additional facts. But your argument, which was really not helpful, was basically about count two. So you never really addressed this problem, which is that he wasn't convicted of count two. And it was declared not to be related conduct. So it's not relevant. To the extent that count two became a factor, it only became a factor after Raich came down and counsel attempted to mold his facts to fit within the particulars of Raich. You may have screwed up in dropping count one, now that we know about Raich. That may have been a mistake. But you did it. So all we have is these 25 plans. That's all we've got. And we also know, from what I understood from the record, that although he did distribute some of the plans that were growing in his front yard, it was before he was arrested on the 25 plans. Those were already gone. So the only ones we have are the ones that were growing in his front yard, 25 plans. Right? Certainly. And nothing in the record about whether that was going to anybody except him and his housemaid. In the record, part of the plea agreement, factually he says he grew them for his personal use and to be distributed to others. That is in the record. Are you basing it on the fact that it says others rather than other? That's certainly part of what I'm basing it on. Others indicate that. But you drafted that language, right? That's correct. You did draft that language. I understood that it was to others. It was simply not to one individual. There were numerous individuals that took care from Mr. McWilliams. He had media rallies in which he indicated to the media that what his intention was to do was to become a caregiver to as many people who had a recommendation in order to use marijuana. He was trying to fit within the state regulations. Selling it? Was he? Well, in this particular case, and again, this goes back to Judge Kleinfeld's suggestion, maybe the record needs to be fleshed out. What was he taking any remuneration whatsoever in order to maintain these plans? Because there's a distinction. I mean, I know you drew in the Black's Law Dictionary definition that Rach decided. But distribution can mean many things. And it can mean distribution short of commerce, short of engaging in a commercial transaction. I mean, there is a rule of construction where you construe something against the drafter that exists. So maybe we should just construe it against your argument and say, well, they didn't say distribution to others in the course of interstate commerce. If the court is looking to do that, I believe that the facts actually support the government's case that it takes its outside the class to find in Rach. And actually, because of that, his conviction should be affirmed. That goes back to as to the 25 plants? That's correct. OK. So tell me what facts that are in the record that show that the 25 plants were somehow put into the stream of commerce? Well, I think Judge Kleinfeld said, should we look to the PSR? Where do we look to gather these facts? The PSR is replete with facts indicating he was distributing to a number of other people. How much of a stash do you get out of 25 plants? My impression is that it would be kind of a lot to smoke. But I don't really have any firsthand knowledge, actually. And what do you get out of 25 plants? I think that in this particular case, I think the PROACT case, which was the case that the Rach case cited and said, well, 100 plants just seems like too many. Well, it's 50 plants too many. Well, this isn't really helpful. You're saying I should rely on some other appellate judge who also probably lacks personal knowledge. I think I had testimony from a DEA agent once that you could figure about an ounce per plant, but I can't remember. It's 15 years ago or more. Well, I would indicate to the Court that 25 plants, in my experience, certainly, as a drug prosecutor, is more than for personal consumption. For two people? For two people. Who are very sick and need it for a long time. I don't know. But we don't know. I don't know. I'd like to know. The Court does not know because initially we were looking at the Congress constitutional issue as it related to the Commerce Clause and whether the Congress had exceeded its authority under the CSA. That's correct. When you drafted this plea agreement, had Raich come down? No. Nor had Raich come down when we did our briefs. So you weren't drafting this with Raich in mind? I was not drafting this with Raich in mind. I was drafting it as the facts. I understood it. He was distributing to other individuals as a caretaker, which is in contradiction to the Raich opinion and takes it outside. Well, it says very clearly in Raich, the cultivation, possession, and use of marijuana for medicinal purposes and not for exchange or distribution. And not for exchange or distribution. But that's just the words. But isn't that a fair reading of that opinion that essentially the holding, holding and the facts both, were that because California recognizes the caretaker relationship, that the caretaker relationship is not interstate commerce in general? Is that not what Raich held? I think that Raich certainly held as to the two parties that were identified in that decision, that as to them, they found that it did not have an effect on interstate commerce. Correct. So therefore, it could be that he's distributing and not affecting interstate commerce. I think that's reading further into the opinion that the Raich Court. But you just said exactly that. I said the Raich Court found as to those two individuals. I certainly don't agree and believe that as to Mr. McWilliams. But it could be. So the word distribution itself is not sufficient to know that it's outside the projection of the Raich opinion. It can't be, because we know in that case there was distribution. Well, I don't think that, as in the dissent, as Judge Beam pointed out, I don't think that the Court adequately explained the caregiver status. We've got to follow the opinion. Didn't the opinion involve the caretaker doing the gardening and giving it to the sick person? It did, but they found that not to be exchange or distribution. In this case. Right. So explain that when they say no exchange or distribution, they don't mean that. Now, in this case, what I don't know is, is this fellow, McWilliams, is he giving away garbage bags full of marijuana so people say, wow, I don't have to drive to Las Vegas or Tijuana anymore. Well, we have videos. There goes interstate commerce. We have videos that indicate just that. He's giving away bundles full of marijuana to individuals that he's taking care of. But here's the problem with this. He was growing other marijuana, lots of it, right? Certainly. And that other marijuana was being given away, and there were or – and there was some testimony about how he was getting some money to grow it, although he claimed it was just for the cause and so on. So if you were talking about that grow, you would have a major Commerce Clause question, and you might well win. But for some reason, you chose only to prosecute these 25 plants, which is not, as I understand it, where the bags were coming from. We have – is there any evidence that any of the – That is exactly where the bags were coming from. That is exactly where individuals were walking out of his residence with their arms full with sheets around bags of marijuana. From those 25 – from the plants that were growing – Well, the 25 plants, obviously, that are in the – I don't mean that. I mean from the plants that were growing at his house, as opposed to once he had it at other locations. That's correct. And that's where the bag was. Where is that in the record? Again, it's not in the record as it relates to the – it's in the record as to the PSR, where they say basically there's a videotape showing it. I brought actually still photographs of exactly that sort of thing. I mean, I had stills made. It's not part of the record, but I would agree with Judge Kline about it. If it's not part of the record, then we have to have a hearing and make it part of the record. That certainly would be a reasonable second choice if the Court finds that it can't make a decision as it relates to distribution in this particular case. Now, I'm not sure we can look at the facts in the PSR because the facts in the PSR are – don't meet the, you know, beyond a reasonable doubt standard. I agree, Your Honor. I think in this particular case that neither counsel was making findings of facts or putting facts into the record so that this Court, again, in this unusual situation, could make an informed decision. And as Judge Kleinfeld has said, to talk about constitutional dimensions of the Controlled Substance Act based on what may or may not in fact be the facts. I agree. Yeah. It's problematic in this case. It really is, that there is such ambiguity in the language. Of course, at the time, it was not that material because Raich hadn't come down. That's correct. And now we're drawing fine lines. That's correct. Now, one last thing. Why – since he was only prosecuted for a manufacture and the distribution was not in the indictment, why does it matter what was in the plea agreement? Certainly, it informs this Court in terms of trying to make a decision whether or not it has an effect on interstate commerce. And I would say that the factual basis obviously has become very important. And so that's why I would say that. I didn't – we didn't understand that or recognize that at the time. It just was the actual facts in the situation. Would you agree, by the way, that ordinarily, whether or not – was it not for this particular procedural sequence, that this would be the subject for a jury trial if the judge – if the defendant wanted to take it to a jury trial? Certainly, if we returned to the district court and there's findings of facts, the government would have no problems whatsoever allowing Mr. McWilliams to withdraw his plea and go to trial. I bet you wouldn't. I'm asking more generally, though. Do you agree that the jurisdictional fact or the constitutional fact that's been identified in Raich needs to go to a jury in general? No. You don't. So how do you envision this operating in general? Well, I think that the Controlled Substance Act has made it very clear there's no jurisdictional requirement that it has traveled in intrastate – intrastate – a controlled substance has traveled intrastate in order to find an individual guilty. If you have a prosecution next week for medical marijuana, what – how are you going to proceed? How are you going to suggest the court proceed? Well, I would suggest the court certainly take expert testimony how the effect of intrastate drug trafficking or, in this case, medical marijuana trafficking affects interstate commerce, consistent with what the Controlled Substance Act says very clearly. But that's, again, as I understand it, an argument with Raich. Let's assume you're going to apply Raich. Why? Do you have a – now have a jurisdictional fact that goes to a jury or not? Well, I would say that if the court is saying if we have a situation – or this panel is saying if we have a situation where we have an individual with three or four plants, he's growing, that's the law in the Ninth Circuit now. It seems to me that this is a lot like the case we had about perjury some years ago. We had an en banc on it. For years and years, all Federal circuits had said materiality is a question to be determined by the court. And then we said in our en banc, no, materiality is an element of the crime, so it has to be determined by a jury beyond a reasonable doubt. And the Supreme Court affirmed. And it seems like this would be – since we're dealing with as applied, everybody's agreed that the statute is – the Federal statute is within Congress's commerce power when there is a substantial effect on interstate commerce. So it seems like there would be a jury question of whether the sale had a substantial effect on interstate commerce, just as in the gun cases, it's a jury question whether the gun traveled in interstate commerce. And in bank robberies, it's a jury question whether the bank is Federally insured. I don't understand why there's a problem with just giving that to the jury. I certainly can understand the rationale in terms of the Court's question, but I disagree. I think that the Controlled Substance Act has taken that away as an element. But can it take it away after Lopez and Morrison? Well, I mean, the Commerce Clause was dead as a restraint on Congress. All it was was a permission for Congress to do anything it chose to do at the end of the New Deal. But then it was revived by Lopez and Morrison as having some meaning, which excluded some things Congress might do. Well, I certainly think that one of the factors that probably the government would seek to show is the commercial and economic effect of medicinal marijuana. That would certainly be one of the factors that the Morrison Court has asked to make a determination whether there is an effect on commerce. That would certainly be one of the things. And I would also show and seek to show by witness testimony that it's not so attenuated, this particular effect. You understand, I'm not asking you how you would prove the case. It seems to me it's not that difficult to imagine constructing a good jury question and constructing proofs on either side. What I'm asking is, is there anything wrong with just treating that as something that goes to the jury? Well, certainly I understand the Court's question, and I see that that is not the law as it is right now, and I don't have an opinion whether it's wrong or right. I understand it's not – there's no need for a jurisdictional hook at this point in time, and I don't see the necessity. And I see the congressional hearings, when they looked at it, because of the tremendous effect that the movement of drugs has in the United States, whether it's intrastate or interstate, there's no need to have that jurisdictional hook. The government should be able to go to the Supreme Court and argue that we were wrong with Raich, and maybe we were. But for us today, this isn't helpful, because we have to follow Raich, and we have to figure out how one does that. And the question really is, did Raich create an additional element of the crime, or is it a jurisdictional prerequisite? If it's an additional element of the crime, then we probably would have to go to a jury. But if it's just jurisdictional, it probably would not. I don't believe that Raich created a new element. I don't know if it could. I don't think Raich even spoke to that. It didn't. It found it in its analysis of divorce, and it said there is no need for the jurisdictional hook. Well, I don't think it really comes up in Raich because of the jurisdictional way that Raich came up. Well, as an injunction, certainly. And I don't really understand your argument on how jurisdiction can be settled, because it seems to me you're arguing Justice Breyer's dissent in Lopez. He says if there are guns at the schools, there will be violence in the schools. If there is violence in the schools, the kids won't study. If they don't study, they'll come out of school ignorant, and if they're ignorant, it will be bad for commerce. The majority says that's too indirect and insubstantial. It has to be more direct and substantial. So the fact that drugs have a bad effect on America and on American commerce is just like Justice Breyer's dissent, and it's a dissent. Whether it's right or wrong, it's a dissent. I don't think to the extent that the analogy quite holds up in connection with guns and marijuana. I think because of the fungible nature of marijuana, I think the effect is much more dramatic. Because there is a market out there. Isn't part of the point of Raich, whether one agrees with it or not, that it isn't the – given the California medical marijuana statute, it's not really fungible, because some people who want medical marijuana but are basically law-abiding people will do it in California because it's lawful in California, but they wouldn't go out and buy illegal marijuana. I mean, isn't that the subtext of Raich? I don't know if it is the subtext, but certainly the understanding or the premise is that these individuals is not going to enter the stream of commerce. That sense is certainly there. And I would say what is it that we base our understanding and belief that it's not going to enter the stream of commerce? What if some individuals will come to, let's say, as an example, to Mr. McWilliams, because now he is the caregiver for 500 people. This gets back to what 25 plants is. Frankly, my understanding from what I recall when I heard about this as a district judge is that one plant in a window box would be plenty for one person with cancer. Just plenty. Maybe two plants in case one plant dies. And 25 is a lot of plants. That was my understanding, but I don't really know. And I gather you don't really know. I do know to the extent that 25 plants is certainly more than sufficient to take care of the personal needs of one, two, and probably ten individuals, so I would agree with the Court as to that analysis. But in terms of giving you an exact what can a plant, it certainly all depends on the maturity of the plant. How tall is the plant? Is the plant a six-foot plant, an eight-foot plant? Has it been interrupted? And that's all part of the facts that apparently this Court would like to have in order to make an informed decision in this area. Thank you, counsel. Take a moment, yes. Let's give counsel a moment and then just, if you have some rebuttal to make or judges have questions, we'll proceed. Just with respect to the yields, Your Honor, the plea agreement specifies that 25 plants yields between one key and 2.5 keys of marijuana. The guidelines specify that that's what you get yield from the plants. So we do have guidance as to how much marijuana is yielded from the plants. One to 2.5 keys. Exactly. That's a lot of marijuana. It is, unless you had a prescription that told you to take 7 grams a day like Mr. Williams does. If you look at the letter I have attached to the last motion to modify, actually it's attached to the letter. A kilo is 1,000 grams. That's correct. Seven grams a day, 365 days in a year is 21,000 grams, right? So, or 2,100 grams. And you've got two people. So we're not outside the boundaries. Well, the plant keeps growing and producing. Yeah, but it's an annual. You don't consume the plant. It's an annual. It's not, it doesn't yield throughout the year. The marijuana plant is an annual plant that can only be harvested once a year, and that's a judicially noticeable fact that can be found in a basic botany book. So that's what I thought I would. Is there a copy of High Times in the record? I can attach that as an addendum if you wish, Your Honor. Do we know that in the record? Do you know that in the record? No. But I'm positing that because it comes from a scientific test. I had a case with High Times in the record where they showed me that. Do we know in the record that it's an annual and you get, what, one kilo a year out of a plant? The record, what I was saying in the annual is from botany textbooks about, you know, what kind of plants marijuana plants are, and the yield is from the guidelines. The guidelines specify how much marijuana comes from an individual plant. The Sentencing Commission has already made this determination. That's not exactly right. The guidelines don't say physically how much marijuana you get out of a plant. They say legally what to make an equivalent to for purposes of sentencing. And there's always the vagaries of, you know, a particular plant. Some plants die. I mean, it's a policy matter rather than a biological matter. But it's a ballpark, too. Equivalence the guidelines make. Right. But, I mean, the Sentencing Commission didn't pull the number out of a hat. I mean, they took testimony on it and figured that this was a good ballpark estimate. I don't know if that's how they did it. Between crack and powder cocaine, they're looking more at social effect than physical equivalent. Correct, but they talk about this in Chapter 1 as to how they determined the yield. And they did it based on what they considered to be an average. They first talked about how much marijuana would be an average marijuana cigarette, which I believe they said was 2.5 to 5 grams. And then they talked about the average yield. So the guideline says a plant is about a kilo a year? I think it's basically a tenth. Whatever the plant is, you get a tenth of that. Like 100 grams per plant is the rough estimate. If there's nothing further. Thank you, Counsel. Thanks, Your Honors. USV McWilliams is submitted. Next.
judges: Kleinfeld, Wardlaw, Berzon